TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0165-KB

IN RE: RONALD COLEMAN TAYLOR, JR.

IN SUPREME COURT

**OPINION AND ORDER**

Pursuant to SCR[1] 3.165(1)(b) and (d), the Inquiry Commission of the Kentucky Bar Association petitions this Court to enter an order temporarily suspending Respondent, Ronald Coleman Taylor, Jr. ("Taylor"), from the practice of law in the Commonwealth of Kentucky. Taylor was admitted to the practice of law in Kentucky on October 17, 2008. His KBA number is 92699, and his bar roster address is 2260 Francis Ln., Cincinnati, Ohio 45206.

The Inquiry Commission argues temporary suspension is warranted because there is probable cause to believe Taylor poses a substantial threat of harm to his clients or to the public, and/or that he does not have the physical or mental fitness to continue to practice law. Taylor has failed to file any response to the Inquiry Commission's Petition for Temporary Suspension.

In its Petition, the Inquiry Commission sets forth the following factual basis for its request for a temporary suspension. Taylor worked for the Law Offices of Blake Maislin, Esq. ("Maislin Law Office") until he was fired in

---

[1] Kentucky Supreme Court Rule.

September 2023 for belligerent behavior toward clients and other employees. According to Maislin Law Office, after leaving his employment Taylor showed up unannounced and physically threatened employees on several occasions.

On the afternoon of April 8, 2024, while Maislin Law Office employees were assembled outside to see a solar eclipse, Taylor drove up blaring loud music, exited his vehicle, and pulled a baseball bat and either an axe or a hatchet from his trunk. According to affidavits filed with the Inquiry Commission's Petition, Taylor stood in the middle of the road and began to scream in a threatening and hostile manner for Blake Maislin to come outside and face him. Taylor had shaved his head and his face was covered with markings. Taylor yelled that he had his "war paint" on and was "ready to do this." Maislin was not with the group of employees or in the building at the time.

The assembled employees retreated into the building while Taylor's former assistant Teresa Mounce approached and spoke with him. Law enforcement was called. Taylor eventually drove away quickly with his tires squealing before police could arrive. Five to ten minutes later he drove by again slowly but did not stop or say anything.

On the same day, Taylor's wife obtained an emergency order of protection ("EPO") against Taylor. The District Court also entered an order requiring Taylor to surrender firearms.

That same evening around 9:40 pm, Taylor began to text Mounce. In the texts, he stated:

2

I'm a Blackfeet Warrior.  You want to do work?  **I will take scalps.**

I was praying that Blake would come out.  I was praying that he would choose the bat since he likes baseball, **so I could execute my plan and take his scalp and drink his blood in front of you while I raged like a deranged starving cornered vengeful beast that prayed on its predator.**

Bring it 300 like the Romans, The Trojans.  The warriors.  Every single person in my family ever besides my dad who had asthma and was disqualified from Vietnam, has been military, marines, navy, Air Force, green berets, rangers, naval gunners, nuclear engineers on submarines, police officers, MPs, snipers, scout snipers, covert officers, advanced lead, intelligence, no pilots unfortunately.  That was my goal and why I joined air force ROTC, in hopes of becoming an Aviator.  Even if it was flying a cargo ship, that I parlayed into what Stacy's husband does.

So don't think that the jew whose dad was a judge and family was in the trucking industry, who I outweigh by 40 lbs of muscle, who I shaved my head in preparation for would ever have a chance in warfare.

I drew a bulls on on my Adams Apple and jugular in case he chose the hatchet, but that would have fucking seriously pissed me off because **I couldn't take scalps until I brained him with that bat.**

The bat can reach out.  So I didn't consider it a disadvantage.

He pissed himself in his office.

**There is another device called a Molotov cocktail that I think would be tremendously effective during like a big mediation, bring some innocents into it, to exponentially heighten the mother fucking horror.**

(Emphasis added).

On April 10, 2024, Maislin filed a formal bar complaint against Taylor in which he alleges Taylor has previously admitted to a drinking problem.  He also states that Taylor's behavior "reveals a very real, immediately dangerous and

3

violent psychosis." On April 15, 2024, Maislin informed the Office of Bar Counsel he had received information Taylor had checked into a rehabilitation facility but then checked himself out.

The Inquiry Commission therefore petitions this Court pursuant to SCR 3.165(1)(b) and (d) for entry of an order temporarily suspending Taylor from the practice of law. SCR 3.165(1)(b) permits the temporary suspension of an attorney if it "appears that probable cause exists to believe that [the] attorney's conduct poses a substantial threat of harm to his clients or to the public." SCR 3.165(1)(d) permits the temporary suspension of an attorney if it "appears that probable cause exists to believe that [the] attorney is mentally disabled or is addicted to intoxicants or drugs and probable cause exists to believe he/she does not have the physical or mental fitness to continue to practice law."

This Court has reviewed the uncontroverted allegations of the Inquiry Commission and agrees that probable cause exists to believe Taylor's conduct poses a substantial threat of harm to his clients or to the public. We further agree that probable cause exists to believe that Taylor is mentally disabled or is addicted to intoxicants or drugs and does not have the physical or mental fitness to continue to practice law. As such, we agree with the Inquiry Commission that his license to practice law should be temporarily suspended pursuant to SCR 3.165(1).

4

ACCORDINGLY, IT IS HEREBY ORDERED as follows:

1) Ronald Coleman Taylor, Jr. is temporarily suspended from the practice of law in the Commonwealth of Kentucky, effective upon the entry date of this Opinion and Order, pending further Orders from this Court;

2) Disciplinary proceedings against Taylor may be initiated by the Inquiry Commission pursuant to SCR 3.160, unless already begun or unless Taylor resigns under terms of disbarment;

3) Pursuant to SCR 3.165(5), Taylor shall, within twenty (20) days from the date of the entry of this Opinion and Order, notify in writing all clients of his inability to provide further legal services and furnish the Director of the Kentucky Bar Association with copies of all such letters; and

4) Pursuant to SCR 3.165(6), Taylor shall immediately, to the extent reasonably possible, cancel and cease any advertising activities in which he is engaged.

All sitting. All concur.

ENTERED: August 22, 2024

_____

CHIEF JUSTICE VANMETER

5